**Drake Aehegma, OSB No. 132905**
Drake Aehegma Attorney at Law LLC
PO Box 8404
Portland, OR, 97207
Telephone: 503-208-5717
Facsimile: 503-914-1472
E-mail: drake@aehegmalaw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MASON LAKE**,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND,**<br><br>　　　　　　　　　　Defendants. | Case No. 3:23-cv-01870-MO<br><br>THIRD AMENDED COMPLAINT<br><br>*VIOLATIONS OF CIVIL RIGHTS (28 U.S.C. § 1983) and SUPPLEMENTAL STATE CLAIMS*<br><br>**JURY DEMAND** |

## INTRODUCTION

1.

This is an action brought to vindicate Plaintiff's rights under the Fourth, the Fourteenth, and the First Amendments of the Constitution of the United States pursuant to 42 U.S.C. §1983 and the Oregon Tort Claims Act.

During the years 2020 and 2021, Plaintiff Mason Lake worked as a videographer filming protests in downtown Portland. During that time period plaintiff was operating as a member of the press and at such times as he was working was clearly marked as a member of the press.

On June 27th, 2020, a Portland Police Bureau officer assaulted Mr. Lake as he followed orders to disperse. On August 21, 2020 an officer unlawfully shoved plaintiff. These incidents are specific examples of a pattern and practice by the City of Portland of allowing unlawful use of force against journalists and members of the press during the course of the protests in downtown Portland.

## BACKGROUND AND CONTEXTUAL FACTS

*"Our liberty depends on the freedom of the press, and that cannot be limited without being lost"*

-Thomas Jefferson

2.

On May 25th, 2020, a Black man named George Floyd was murdered in Minneapolis, Minnesota, by an officer of the City of Minneapolis Police Department, Derek Chauvin. Chauvin held his knee to Floyd's neck for at least eight minutes and 46 seconds while his fellow police officers stood by and casually watched Floyd die.

3.

Following George Floyd's gruesome public murder, protests erupted nationwide in support of the Black Lives Matter (BLM) movement and against systemic racism, police brutality and use of excessive force. Across the country, police met these protests with violence, brutality and excessive force.

Page 2 – **Third Amended Complaint**

4.

On May 28, 2020, thousands of people began months of sustained protests in Portland, Oregon in support of Black Lives Matter and against police violence.

5.

Amongst the protestors were numerous members of the press documenting the protests and fulfilling a pivotal and integral societal role. Plaintiff Mason Lake was one of those members of the press.

6.

Portland Police Bureau ("PPB") officers met these protests with violence and excessive force, indiscriminately attacking the crowd with pepper balls, batons, sonic weapons, and tear gas, in the midst of a global pandemic that attacked respiratory systems. During Black Lives Matter protests between May 29th and November 15th, 2020, Portland Police Bureau officers used force more than 6000 times.[1]

7.

In 2012, the United States Department of Justice ("DOJ") issued findings that the City of Portland's Police Bureau was engaging in a pattern and practice of unconstitutional excessive force against community members and identified deficiencies in the City's use of force policies, practices, training, and officer accountability. As a result, the DOJ filed a lawsuit against the City, alleging this unconstitutional pattern and practice of excessive force. The 2014 Settlement

---

[1] United States of America v. City of Portland, 3:12-cv-02265 (D. Or.), EFC 236.

Page 3 – **Third Amended Complaint**

Agreement negotiated by the City and the DOJ included terms related to City's use of force policies, practices, and training, and enhancement of its data collection practices.

8.

From 2012 through the present, the Portland Police Bureau has revised its use of force policies and trainings to emphasize de-escalation, in order to address the allegations of excessive use of force articulated in the DOJ lawsuit. In practice, however, the Portland Police Bureau does not effectively discipline officers who fail to de-escalate confrontations and does not effectively discipline officers who use excessive force.

9.

On April 2nd, 2021, the DOJ issued the City a formal notice of noncompliance with the 2014 Settlement Agreement, following its February 10th, 2020 "Fifth Periodic Compliance Report." Regarding the Black Lives Matter Protests, DOJ wrote:

> During these crowd-control events, PPB reports that its officers used force more than 6,000 times. Some of this force deviated from force policy, and supervisors frequently validated individual uses of force with little or no discussion of reasonableness of the force used. [2]

10.

Outside consultants hired by the City to assess its compliance with the 2014 Settlement Agreement likewise found that PPB was unable to maintain substantial compliance with its terms regarding the use of force at Black Lives Matter Protests in 2020. The report concludes, "[a]t times, no distinction was made between persons engaging in serious criminal acts and those who, while unlawfully remaining in an exclusion zone, posed no threat and offered no resistance."[3]

---

[2] United States of America v. City of Portland, 3:12-cv-02265 (D. Or.), ECF 236.
[3] Compliance Officer and Community Liaison Quarterly Report, March 12, 2021; https://www.portlandoregon.gov/

Page 4 – **Third Amended Complaint**

11.

Earlier assessments likewise found the City's use of force at Black Lives Matter protests to be unlawful. On November 27th, 2020, United States District Court Judge Marco Hernandez found the City in contempt of its June 26th, 2020 Stipulated Additional Temporary Restraining Order, which restricted the use of other crowd-control munitions, including FN303s and 40MM less lethal launchers.[4] This contempt finding was based on the conduct of Portland Police Bureau officers at a June 30th, 2020 Black Lives Matter protest.

12.

Members of the press, including plaintiff, were assaulted, battered, and believed that they were targeted by law enforcement.[5] On July 2, 2020 a federal judge granted a temporary restraining order that barred PPB from arresting or using physical force against anyone officers "know or reasonably should know" was a journalist or legal observer unless officers had probable cause that the person had committed a crime.[6] The Judge reviewed evidence by journalist and member of the press declarants of PPB officers "targeting journalists".[7]

13.

These numerous declarations included testimony such as Ms. Mahoney who attended a protest on June 30, 2020 as a legal observer wearing a blue ACLU-issued vest that clearly identified her as a legal observer.[8] Ms. Mahoney stated that a police officer slammer her in the back with a truncheon striking her diagonally from the base of her right shoulder blade to her

---

pccep/article/782536
[4] Don't Shoot Portland v City of Portland, 3:20-cv-00917 (D. Or.), ECF 204.
[5] Index Newspapers LLC et. al. v. City of Portland et. al. 3:20-cv-1035-SI (D. Or.), ECF 276
[6] Index Newspapers LLC et. al. v. City of Portland et. al. 3:20-cv-1035-SI (D. Or.), ECF 33
[7] Id.
[8] Id.

Page 5 – **Third Amended Complaint**

lower left side, across her spine and rib cage.[9] Another declaration was provided by Justin Yau who contended in his declaration that on July 15, 2020, while carrying photojournalist gear and wearing reflective, professional-looking clothing clearly identifying him as press, he was targeted by a federal agent and had a tear gas canister shot directly at him.[10]

14.

Despite unlawful force used against Plaintiff Mason Lake he was never arrested nor was he ever charged with any unlawful conduct.

15.

These are just a handful of the many accounts of journalists and legal observers who believed they were targeted by Portland police officers and federal officers and who reported unlawful force being used against them.[11]

16.

During the time period of these protests the City of Portland and the Portland Police Department took insufficient steps to de-escalate tensions between law enforcement and protestors and journalists. nor did City of Portland take sufficient steps to de-escalate the tensions between civilians and members of the press and federal agents. As an example, when Oregon State Police took command and took steps to de-escalate OSP was successful in doing so.[12] "The effect was immediate and palpable, as use of force incidents and arrests declined as soon as the OSP assumed control."[13] City of Portland could have taken these same steps.

---

[9] Id.
[10] Index Newspapers LLC et. al. v. City of Portland et. al. 3:20-cv-1035-SI (D. Or.), ECF 56
[11] Index Newspapers LLC et. al. v. City of Portland et. al. 3:20-cv-1035-SI (D. Or.), ECF 33
[12] The Handling of the 2020 Protests and Riots in Portland, Oregon: An Independent Review, Independent Monitor LLC, Nicholas E. Michel. Citing Statement by Oregon State Police Superintendent Travis Hampton, available at https://www.facebook.com/OSPsocial/photos/a.263576720688320/1162073667505283/?type=3
(July 29, 2020).
[13] Id at p15.

Page 6 – **Third Amended Complaint**

## JURISDICTION AND VENUE

17.

This action is brought pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, for violations of constitutional rights held by all persons.

18.

This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343.

19.

This court has supplemental jurisdiction of Plaintiff's pendent state law claims under 28 U.S.C. § 1367.

20.

Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon, and because Defendants are subject to personal jurisdiction in the District of Oregon.

## PARTIES

21.

Plaintiff Mason Lake was at all relevant times was, a resident of Portland, Oregon.

22.

Defendant City of Portland ("City") was at all times a municipal subdivision of the State

Page 7 – **Third Amended Complaint**

of Oregon. The City is a "person" pursuant to 42 U.S.C. § 1983.

# FACTUAL ALLEGATIONS

23.

Plaintiff has been working as a freelance videographer for fifteen years and in his capacity as a member of the press in Portland, Oregon for four years.

24.

During the course of the protests in downtown Portland, plaintiff was working as a member of the press, specifically as a videographer recording events. During his time working as a member of the press during the protests plaintiff wore clothing clearly marked as "Press".

25.

On many occasions Plaintiff witnessed members of the press being targeted by law enforcement including members of the Portland Police Department as well as Federal Law Enforcement Officers. Plaintiff himself was also targeted by law enforcement on a multitude of occasions by both Portland Police Officers and Federal Officers.

26.

Defendant City of Portland did not take sufficient steps to dissuade law enforcement from targeting, harassing, and assaulting members of the press during the course of these protests.

27.

Plaintiff directly witnessed and is aware of other members of the press being assaulted, battered, and targeted by law enforcement while operating as members of the press while covering the protests in downtown Portland.

Page 8 – **Third Amended Complaint**

28.

City of Portland has not taken adequate measures to deescalate violence against members of the press by law enforcement.

29.

City of Portland has not taken adequate measures to remove from active duty and criminally charge law enforcement who targeted and used unlawful force against protesters and members of the press.

30.

It seemed to be the practice of the City of Portland to allow its police officers to use excessive force against individuals including journalists and members of the press.

31.

Portland Police Officers were not properly trained in use of force and handling large protests including specifically how to deal with journalists and members of the press.

32.

Portland Police Officers who used excessive force were not disciplined in such a way that limited such unlawful activity.

33.

On or about the evening of June 27, 2020, plaintiff was working in his capacity as a member of the press in downtown Portland.  In his capacity as a member of the press plaintiff was filming protestors and events in the vicinity of SW 4th & Main in Portland, Oregon. Throughout the night, plaintiff was in the vicinity of other members of the press who were clearly marked as such. Prior to the incident in question, law enforcement officers were instructing the crowd of protestors to move to the west.  Plaintiff complied with the law

enforcement orders and was moving the direction instructed while filming the crowds as he went.

34.

When plaintiff attempted to help a fallen individual to their feet a Portland Police Officer physically grabbed and pushed plaintiff.  The Officer then aimed and released OC spray directly in plaintiff's face causing injury to plaintiff. As a result of the assault, and battery, plaintiff suffered physical injuries including pain, burning sensations, as well as fear and embarrassment.

35.

All officers mentioned or referred to herein were at all times acting within the course and scope of their agency and employment.

36.

Written notice of this claim was provided to Multnomah County and the City of Portland.

37.

On or about the night of August 21, 2020 and the morning of August 22, 2020 plaintiff was operating as a member of the press in the area of Portland Police Precinct at 449 NE Emerson St, Portland, OR 97211. In his capacity as a member of the press plaintiff was filming protestors and events in the vicinity of SW 4th & Main in Portland, Oregon and throughout the night, plaintiff was in the vicinity of other members of the press who were clearly marked as such.

38.

On or about 1 am in the morning of August 22, 2020 Plaintiff was physically shoved by a Portland police officer with the DPSST Badge 577770 on the Officer's chest.

Page 10 – **Third Amended Complaint**

39.

As a result of these unlawful acts plaintiff suffered physical injury as well as fear.

40.

During the course of the protests Portland Police Officers were wearing the uniforms of the Portland Police Officers and were operating under the color of law and with the authority of the City of Portland.

41.

Plaintiff believes that he was repeatedly targeted for being a member of the press and unlawful force was used against him by employees of the City of Portland.

## FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Fourth Amendment Violation, First Amendment Violation - Monell Unconstitutional Policy, Custom, or Practice**

42.

Plaintiff realleges all previous paragraphs as if fully set forth herein.

43.

At all times material Plaintiff had a protected liberty interest under the Fourth Amendment not to be subjected to an unreasonable seizure of his person through the application of undue, unnecessary, and excessive force. The Defendants violated each of these Fourth Amendment Rights.

44.

Page 11 – **Third Amended Complaint**

At all times material Plaintiff had a protected liberty interest under the First Amendment not to be subjected to an unreasonable limitations and chilling effects on his freedom of speech and freedom of the press. The Defendant violated each of these First Amendment Rights.

45.

The City of Portland has a custom, practice, or unofficial policy of the following:

   A. Allowing police officers to use excessive force against protesters and members of the press working at the protests;

   B. Allowing police officers to use excessive force against individuals more broadly;

   C. Validating the use of force against members of the press at the protests with no discussion of the reasonableness of the force used; Failing to properly train officers in the application of force against journalists and members of the press;

   E. Failing to properly train officers in the application of force generally;

   F. Failing to comply with court orders restricting the use of force against protesters and members of the press; and

   G. Failing to effectively discipline police officers who use excessive force.

46.

These customs, practices, or unofficial policies were the moving forces that resulted in the unconstitutional, excessive force, and battery of Plaintiff. As a direct result of these constitutional violations, Plaintiff was placed in fear for his life, and suffered physical injury and mental harms, outrage, betrayal, offense, indignity, and insult causing damage in amounts to be proven at trial.

47.

Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover his attorney fees and costs.

Page 12 – **Third Amended Complaint**

## SECOND CLAIM FOR RELIEF

### State Law – Assault and Battery

48.

Plaintiff re-alleges and incorporates by reference all previous paragraphs.

49.

As a result of the actions taken by Portland Police Officers on June 27, 2020, plaintiff was placed in apprehension of an immediate harmful and offensive contact. Plaintiff was placed into fear for his safety. Plaintiff suffered from fear and humiliation.

50.

Portland Police officers acted, intending to cause harmful and/or offensive contact with plaintiff.

51.

The officers' actions caused offensive contact with plaintiff.

52.

The officer's offensive and/or harmful contact was unlawful and utilized excessive force.

53.

Officers were acting within the course and scope of their employment with the City at the time of their batteries of Plaintiff.

54.

Plaintiff suffered pain, and humiliation as a result of the contact.

## THIRD CLAIM FOR RELIEF

### State Law – Negligence

Page 13 – **Third Amended Complaint**

55.

Plaintiff realleges all previous paragraphs as if fully set forth herein.

56.

The City of Portland was negligent in the following particulars:

G.   In failing to effectively prohibit police officers from using excessive force against protestors and members of the press;

H.   In validating the use of force against members of the press with no discussion of the reasonableness of the force used;

I.   In failing to comply with court orders restricting the use of force against protestors and members of the press.;

J.   In failing to enforce its own use of force directives;

K.   In failing to effectively train its police officers in the proper use of force sufficiently to enable the officers to comply with the City's use of force directives;

L.   In failing to supervise officers the night they attacked plaintiff and violated the City's use of force directives as alleged.

M.   In failing to effectively discipline police officers who violate its use of force directives; and

N.   In failing to discipline Defendants for any past uses of force, despite knowing that appropriate discipline was likely to make them less of an unreasonable threat to others in the future.

57.

Page 14 – **Third Amended Complaint**

As a foreseeable result of the City's negligence, Defendants attacked and injured Plaintiff as alleged above. Plaintiff is entitled to an award of economic and noneconomic damages in an amount to be determined at trial.

WHEREFORE Plaintiff prays for judgment Defendant as follows:

1. For compensatory economic and noneconomic damages in an amount to be determined by a jury;

2. For plaintiff's attorney fees pursuant to 42 U.S.C. § 1988;

3. For Plaintiff's costs and such other and further relief as the Court may deem just and equitable; and

4. Plaintiff demands a jury trial for all matters triable of right to a jury.

DATED this July 19, 2024

/s/ *Drake Aehegma*_____
Drake Aehegma, OSB #132905
Email: drake@aehegmalaw.com
Drake Aehegma, Attorney at Law, LLC
PO Box 8404
Portland, OR 97207
Telephone: (503) 208-5717
Fax: (503)914-1472

PLAINTIFF HEREBY DEMANDS A JURY TRIAL

Page 15 – **Third Amended Complaint**